WAHLSTROM, Respondent, vs. HILL and wife, Appellants.

*December 4, 1933—January 9, 1934.*

534

For the appellants there was a brief by *W. H. Stafford* and *Harold E. Stafford,* both of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondent the cause was submitted on the brief of *Fisher, Cashin & Reinholdt* of Stevens Point.

ROSENBERRY, C. J.   The complaint was upon a promissory note for $600, dated March 5, 1932, which constituted the first cause of action.   The second cause of action was on *quantum meruit* for certain services alleged by the plaintiff to have been rendered by him at the special instance and request of the defendants, the value of which the jury found to be $115.

It appears that the defendants contemplated the construction of an apartment building in the city of Stevens Point. The plaintiff is a building contractor and a resident of the same place.   On November 25, 1931, the plaintiff entered into a contract with the defendants as a contractor whereby

the defendants, the owners, agreed to employ him to plan and erect a six-apartment, three-story, fireproof building and to pay the contractor the sum of $2,800.

"This to include all the plans and specifications and all the personal time and labor required for the entire completion of the building. Of this sum, $750 is payment for the plans and specifications and $2,050 for personal service. The owners agree to furnish all the materials and labor required for the erection and completion of the building.

"The contractor agrees to furnish all the plans and specifications required, for the erection of the building. He also agrees to give his full personal time and supervision to the work. He is to have full control of all the buying of materials, the hiring of mechanics and laborers and letting of subcontracts. He is to keep a complete daily record of the progress of the work; consulting with the owners from time to time, as to the progress and cost of work."

There was a further stipulation as to guaranteed cost and the contract further provided:

"The work also includes the wrecking of the old building, now on the site—also erection of a six-stall garage, the materials for the garage to be from old buildings, as much as possible. It also includes all walks and grading that may be necessary to make a complete job."

The plans and specifications were prepared about the middle of December by architects in Winona, Minnesota, who were licensed to do business in Wisconsin. The plaintiff made three trips to Winona for conferences with the architects and rendered some services with respect to financing. The plaintiff had also proceeded to procure bids. The project was finally abandoned because of the inability of the defendants to finance it. The defendants had paid $155 and had given the plaintiff a note for $600 on account of the plans and specifications.

It is the contention of the defendants that the contract was illegal and void under the provisions of sec. 101.31 for the reason that the plaintiff held himself out as an architect

and engaged in the practice of architecture as defined in that section. It appears that the defendants knew that the plaintiff was not a licensed architect at the time they entered into the arrangement with him. By the provisions of sec. 101.31 (1) (a), Stats., the term "architect" as used in the act means one who represents himself to be an architect. By sub. (1) (b) the practice of architecture "embraces design or responsible supervision of the construction, enlargement or alteration of public or private buildings, or parts thereof, to be constructed, for others." Sec. 101.31 (7) (f) makes certain exceptions which are not material here.

Sec. 101.31 (11) provides that any person practicing architecture without a license shall be guilty of a misdemeanor and shall be punished by a fine not less than one hundred dollars nor more than five hundred dollars, or by imprisonment for not more than three months, or both.

Under the law as it was in 1925, it was held in *Hickey v. Sutton,* 191 Wis. 313, 210 N. W. 704, that an architect not registered and licensed could not recover on contract or on *quantum meruit* for architectural services rendered. In that case one of the plaintiffs was represented to be an architect. Plans were furnished in which the plaintiffs were represented to be "architects and builders." The plans furnished were not rough sketches such as ordinarily made by carpenters and builders, but elaborate and carefully prepared plans and specifications. See, also, *Fischer v. Landisch,* 203 Wis. 254, 234 N. W. 498.

It is the contention of the defendants that the law relating to the registration of architects was rewritten by ch. 486 of the Laws of 1931, which was in effect on the day the contract was entered into between plaintiff and the defendants. In this connection we are cited to *Adams v. Feiges,* 206 Wis. 183, 239 N. W. 446, where it is held: "If the statute prohibited the performance of architectural services by one not licensed as an architect, the complaint would no doubt be subject to demurrer."

We have now therefore for determination what is meant by "responsible supervision of the construction, enlargement or alteration of a public or private building." Upon the undisputed facts it appears here that plans and specifications, using the words in their more technical meaning, were furnished by licensed architects. It seems clear that the services which the plaintiff undertook to render were not "responsible supervision of the construction, enlargement or alteration" of the building in question. What he undertook to do was to act as agent of the defendants in the letting of contracts and in the doing of things which an owner might properly do for himself and so make his knowledge and skill as a builder, his familiarity with the value of materials, labor, etc., available to the defendants. This differs widely from the supervisory services ordinarily rendered by an architect who goes upon the job for the purpose of ascertaining whether or not the materials being used are of the quality and kind specified and whether or not the work is done in conformity with the plans and specifications. The statute refers to the sort of supervision which an architect ordinarily gives. It cannot be construed to forbid all supervision except by a licensed architect. Every superintendent and foreman, and in the main every workman, must of necessity do his work in such a manner as to conform to the plans and specifications. The supervision that is necessary to performance is not the supervision that is ordinarily rendered by an architect. What the architect does is to ascertain whether the work has been done as planned. There is of necessity supervision of a sort which precedes that of the architect. The architect is responsible for seeing that the plans and specifications are carried out, not for the method by which the final result is achieved unless the method adopted is one which will not permit of the result intended. There is nothing in the statutes which prevents an owner from procuring plans and specifications and letting a contract for the erection of the building in accordance with the plans and

specifications so procured. We find in the contract no clause by virtue of which the plaintiff undertook what is designated in the statute as "responsible supervision." He agreed to help the owners procure an architect to make the plans and specifications, to give his full time and supervision to the work, to control the purchase of materials, the hiring of mechanics and laborers, and the letting of subcontracts. The work which he was to do was that ordinarily performed by superintendents and foremen. Responsible supervision of construction, etc., is something above that, the nature of which has already been indicated. The trial court well said:

"It is a matter of common knowledge that an architect may be employed merely to make plans and specifications or he may additionally contract to supervise the construction. Such supervision of construction means inspection from time to time by the architect to see that his plans and specifications are complied with. The object of the statute is to guard against the erection of unsafe and unsanitary buildings. Proper plans and specifications accompanied by proper construction must be assured by competent architect service. Proper construction includes inspection of the material used and the performance of the construction work so as to comply with the plans and specifications.

"Such architectural work does not call for the transaction of the business part of the owner in the buying of materials, hiring of laborers and mechanics, letting of subcontracts, attending to payrolls and payments and all similar work. . . . 'Responsible supervision' does not include this business part of the owner's work of constructing the building, nor does it require any service in the way of financing the construction."

As indicated by the trial court, the purpose of the statute is to prevent the public from being imposed upon by people who may represent themselves as architects, who are not in fact possessed of the necessary skill and training. This results, of course, in the attainment of the further object of having public buildings constructed so as to insure the safety and health of the public. The trial court correctly held upon the evidence that the plaintiff did not hold himself out as an

architect and that he did not by his contract agree to render the service of responsible supervision of construction, etc. The defendants contend that the plaintiff held himself out as an architect in violation of the statute. The trial court held that he did not so hold himself out to the defendants; that he informed the defendants early in the negotiations that he was not an architect but a contractor. If he held himself out to others as an architect he may have violated the law, but that had nothing to do with the contract between the plaintiff and the defendants. The defendants cannot defend on the ground that on some other occasion or in some other connection the plaintiff violated the statute. That is a matter for the district attorney. Sec. 101.31 (11) (b).

We have considered other assignments of error and find none that merit further discussion. If any error was committed in submitting the matter to the jury it was favorable to the defendants. As suggested by the trial court, the plaintiff might well have stood upon the contract instead of in *quantum meruit*.

*By the Court.*—Judgment affirmed.